**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| VL COLLECTIVE IP LLC,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>Defendant. | Civil Action No. 2:26-cv- 986<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF VL COLLECTIVE IP LLC'S COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff VL Collective IP LLC ("VL IP"), by and through its undersigned counsel, files this Complaint for Patent Infringement relating to U.S. Patent Nos. 8,514,868 ("'868 Patent"), U.S. Patent No. 9,069,599 ("'599 Patent"), and U.S. Patent No. 9,973,474 ("'474 Patent") (collectively, "Asserted Patents") and alleges as follows:

## INTRODUCTION

1. Founded in 2019, with support from widely recognized industry leaders, VideoLabs, Inc. ("VideoLabs") launched to address the problem created by multiple companies owning various inventions that enable delivery of high-quality video end-to-end for consumers by offering an efficient license to those inventions.

2. Initially, VideoLabs offered membership on its platform to all willing companies. In exchange for low-cost membership or licensing fees, VideoLabs provided access to its patent portfolio and a commitment to seek out the most important patents in the video industry and clear them. Many prominent companies recognized the benefits of the VideoLabs platform and worked

with VideoLabs to efficiently and responsibly license its video technology patents.[1]

3. In 2024, VideoLabs shifted its focus in two important ways. First, VideoLabs shifted from clearing patents predominantly related to technologies involved in end-to-end video to acquiring and licensing patents more broadly related to high-technology innovations. Second, VideoLabs also shifted its licensing model to place direct emphasis on serving innovators through an equitable licensing platform. In this way, VideoLabs continued to offer an efficient licensing model and platform to technology implementers while primarily serving patent owners and innovators equitably in the high-technology marketplace.

4. Building on its history of acquiring the most important patents and in view of its shifting focus, in 2024, VideoLabs acquired a patent portfolio from DXC Technology Company relevant to cloud computing. That portfolio, a subset of which comprises the Asserted Patents, originated with ServiceMesh, Inc. ("ServiceMesh"), a pioneering company founded around 2008 that innovated technologies in cloud computing. ServiceMesh pioneered a platform that enabled and automated management of both on-premises and cloud-based services.[2] That platform allowed organizations to accelerate the adoption of cloud-based services and, today, the technologies innovated by ServiceMesh form a core offering of International Business Machines Corporation's (hereafter "IBM" or "Defendant") cloud services.

5. Consistent with its business practice, VideoLabs attempted to enter into good-faith discussions with Defendant IBM to negotiate a reasonable license to the Asserted Patents. Despite those attempts, Defendant knowingly continued its infringement of the patents-in-suit, continues to do so today, and will continue to do so until this Court puts a stop to its infringement.

---

[1] VideoLabs, *Licensees*, https://www.videolabsinc.com/licensees
[2] ZDNet, *ServiceMesh Agility Platform 8.0 Aims to Help Enterprises Rein in Shadow IT*, https://www.zdnet.com/article/servicemesh-agility-platform-8-0-aims-to-help-enterprises-rein-in-shadow-it/

6. VL IP was founded in 2019 as a subsidiary of VideoLabs. VideoLabs is the prior owner of the ’868 Patent, ’599 Patent, and ’474 Patent. In January of 2026, VideoLabs assigned all right, title, and interest in these Asserted Patents to VL IP.

7. VL IP owns the ’868 Patent, titled “Cloud Computing Gateway, Cloud Computing Hypervisor, and Methods for Implementing Same.” The ’868 Patent covers a cloud gateway system, a cloud hypervisor system, and methods for implementing the same. The inventions of the ’868 Patent are a significant advance in the field of cloud computing, including systems and methods for managing cloud infrastructure and communicating with cloud provisioning and management tools.

8. VL IP owns the ’599 Patent, titled “System and Method for a Cloud Computing Abstraction Layer with Security Zone Facilities.” The ’599 Patent covers a virtualization environment adapted for development and deployment of at least one software workload, the virtualization environment having a metamodel framework that allows the association of a policy to the software workload upon deployment of the software workload. The inventions of the ’599 Patent are a significant advance in the field of cloud computing, including systems and methods for securing, controlling and managing cloud services, applications, platforms, and infrastructure.

9. VL IP owns the ’474 Patent titled “Cloud Computing Gateway, Cloud Computing Hypervisor, and Methods for Implementing Same.” The ’474 Patent covers a cloud gateway system, a cloud hypervisor system, and methods for implementing the same. The inventions of the ’474 Patent are a significant advance in the field of cloud computing, including systems and methods for managing cloud infrastructure and communicating with cloud provisioning and management tools.

10. VL IP brings this action to remedy Defendant IBM’s infringement of VL IP’s

patented technology. IBM provides cloud computing technology using the inventions claimed in the Asserted Patents in its IBM Cloud products and services, including, for example, Red Hat OpenShift Virtualization Service on IBM Cloud, IBM Cloud Virtual Private Cloud (VPC), IBM Cloud File Storage for VPC, IBM Cloud Kubernetes Service, and IBM Cloud VPN for VPC products (collectively, "IBM Cloud Products") and knowingly induces customers, end users, and third parties to directly infringe the claims of the Asserted Patents. IBM also directly infringes the Asserted Patents as set forth below.

## THE PARTIES

11. Plaintiff VL Collective IP LLC is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Palo Alto, CA.

12. On information and belief, Defendant IBM is a corporation organized and existing under the laws of the State of New York, having its principal place of business at 1 New Orchard Road, Armonk, NY 10504. IBM also maintains regular and established places of business in the Eastern District of Texas, including at 1649 West Frankford Rd., Carrollton, Texas 75007 and 6715 Pinecrest Drive, Plano, Texas 75024. IBM has a Texas registered agent for service, CT Corporation System, located at 1999 Bryan Street, Suite 900, Dallas, TX 75201.

## JURISDICTION AND VENUE

13. This is a civil action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code, including 35 U.S.C. § 271. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

14. This Court has personal jurisdiction over IBM pursuant to due process and/or the Texas Long Arm Statute because (i) IBM has committed and continues to commit acts of patent infringement, including acts giving rise to this action, within the State of Texas and within this District, (ii) IBM recruits Texas residents, directly or through an intermediary located in this state,

for employment inside or outside this state, for example, in its Plano, Carrollton and Dallas data centers and offices, and (iii) IBM is registered to do business in Texas. The Court's exercise of jurisdiction over IBM would not offend traditional notions of fair play and substantial justice because IBM has established minimum contacts with the forum.

15. On information and belief, IBM makes, uses, sells, offers for sale, and/or imports into the United States, including in this District, products and services, including, without limitation, the IBM Cloud Products. IBM has continuous and systematic business contacts with the State of Texas. IBM, directly or through subsidiaries or intermediaries, conducts its business extensively throughout Texas, by offering for sale, selling, and advertising its products and/or services in the State of Texas and the Eastern District of Texas, including its IBM Cloud Products and associated services. IBM, directly and through subsidiaries or intermediaries, has purposefully and voluntarily placed one or more of its products and services, including its IBM Cloud Products and associated services, into the stream of commerce with the intention and expectation that they will be purchased and used by consumers in the State of Texas and the Eastern District of Texas. These products and/or services, including the IBM Cloud Products and associated services, have been and continue to be purchased and used by consumers in the State of Texas and the Eastern District of Texas. In addition, on information and belief, IBM conducts operations related to its products and services, including the IBM Cloud Products and associated services in its Eastern District of Texas facilities.

16. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b) because IBM has committed acts of infringement and has regular and established places of business in this District. IBM has committed acts of infringement in this District, directly and/or through intermediaries, by, among other things, making, using, offering to sell, selling, and/or importing

products and services that infringe the Asserted Patents, as alleged herein. IBM has additionally committed acts of infringement in this District, indirectly, by, among other things, inducing others to infringe the Asserted Patents and contributing to the infringement of others, as alleged herein. IBM is registered to do business in Texas and has several regular and established places of business in this District as discussed below.

17. IBM operates and maintains its DAL13 IBM Cloud data center in this District at 1649 West Frankford Rd., Carrollton, Texas 75007, and its DAL14 IBM Cloud data center in this District at 6715 Pinecrest Drive, Plano, Texas 75024. IBM identifies the DAL13 and DAL14 data centers at these addresses on its ISO 27017 certificate.[3] IBM announced the DAL14 data center on its website, stating "Today, IBM Cloud opened its 10th data center in Dallas, Texas, in support of their virtual private cloud (VPC) operations. DAL14, the new addition, is the fourth availability zone in the IBM Cloud area of Dallas, Texas."[4] On information and belief, IBM employees and/or contractors acting at IBM's direction install and maintain the infrastructure and equipment at these IBM data centers.

18. IBM maintains millions of dollars of business personal property in Denton County, within this District, as shown below.[5]

---

[3] IBM Cloud Infrastructure (IaaS), ISO 27017:2015 Certificate No. US022539, at 2 (Bureau Veritas, issued Aug. 11, 2026), https://www.ibm.com/downloads/documents/us-en/137a1e27e5dbaef2 (last visited Oct. 29, 2026).

[4] IBM, *IBM Cloud Expands Its VPC Operations in Dallas, Texas*, https://www.ibm.com/new/announcements/ibm-cloud-expands-its-vpc-operations-in-dallas-texas (last visited Oct. 29, 2026).

[5] Denton Central Appraisal District, Property Summary Reports, Tax Year 2026, Property ID Nos. 976738, 1002186, 1002187, and 1086487, https://www.dentoncad.com/property-search (printed Oct. 25, 2026).

**Denton Central Appraisal District**
DENTON COUNTY, TEXAS

# Property Search

Compound Text Sea... | ibm corporation | 2026

| Year | PropID | City | Legal Description | Market Value | Appraised Value |
|---|---|---|---|---|---|
| 2026 | 976738 | CARROLLTON | PERSONAL PROPERTY - EQUIPMENT AT CYRUSONE LOCATION: 1649 W FRANKFORD RD, CARROLLTON | $56,481,695.00 | $56,481,695.00 |
| 2026 | 1002186 | ROANOKE | PERSONAL PROPERTY - EQUIPMENT AT CYRUSONE LOCATION: 931 LITSEY RD, ROANOKE | $7,636.00 | $7,636.00 |
| 2026 | 1002187 | LEWISVILLE | PERSONAL PROPERTY - EQUIPMENT AT CYRUSONE LOCATION: 615 SH 121 BYPASS, LEWISVILLE | $50,899.00 | $50,899.00 |
| 2026 | 1086487 | LEWISVILLE | PERSONAL PROPERTY - EQUIPMENT AT CYRUSONE LOCATION: 2501 EDMONDS LN, LEWISVILLE | $46,757.00 | $46,757.00 |

Values from Denton CAD 2026 Property Summary Reports (*see* n.5).

19. Similarly, IBM maintains significant business personal property in Collin County, within this District. Collin Central Appraisal District's 2026 records list approximately $13.9 million of IBM business personal property at "various locations" in Collin County, the substantial majority (approximately $13.4 million) within the City of Plano, as shown below.[6] The 2026 records also list approximately $26.8 million of IBM business personal property, as of January 1, 2026, at 1700 Summit Avenue, Plano, the site of IBM's former DAL07 data center, which IBM has since decommissioned. IBM's DAL14 data center in Plano is located at 6715 Pinecrest Drive.

[6] Collin Central Appraisal District, Property Search Results, Owner "IBM Corporation," Tax Year 2026, https://esearch.collincad.org/search/ (last visited Oct. 25, 2026).

Collin CAD
Property Search

Homepage | Interactive Map | Taxpayer Portal | Agent Portal | Online Forms

Page 1 of 1 - Total: 10 (0.10 seconds)

Grid | List

Customize View | Year: 2026 | Page Size: 25 | Download Results

1 - 10 of 10 items

| Property ID | Year | Geo ID | Type | Owner Name | Owner ID | Situs Address ↓ | Legal Description | Appraised | Street Number | Street Name | Doing Business As |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2982792 | 2026 | P-9001-226-7697-1 | P | IBM CORPORATION | 14748 | VARIOUS LOCATIONS SPL, TX | BPP AT VARIOUS LOCATIONS SPL | $13,596,520 | 0 | VARIOUS LOCATIONS SPL | IBM CORPORATION |
| 2982787 | 2026 | P-9001-226-7695-1 | P | IBM CORPORATION | 14748 | VARIOUS LOCATIONS SMC, TX | BPP AT VARIOUS LOCATIONS SMC | $15,292 | 0 | VARIOUS LOCATIONS SMC | IBM CORPORATION |
| 2987351 | 2026 | P-9000-226-3520-1 | P | IBM CORPORATION | 14748 | VARIOUS LOCATIONS SAL, TX | BPP AT VARIOUS LOCATIONS SAL | $271,981 | 0 | VARIOUS LOCATIONS SAL | IBM CORPORATION |
| 2982797 | 2026 | P-9001-226-7699-1 | P | IBM CORPORATION | 14748 | VARIOUS LOCATIONS GCN JCN, TX | BPP AT VARIOUS LOCATIONS GCN JCN | $13,883,793 | 0 | VARIOUS LOCATIONS GCN JCN | IBM CORPORATION |
| 2982794 | 2026 | P-9001-226-7698-1 | P | IBM CORPORATION | 14748 | VARIOUS LOCATIONS CRC, TX | BPP AT VARIOUS LOCATIONS CRC | $204,804 | 0 | VARIOUS LOCATIONS CRC | IBM CORPORATION |
| 2982789 | 2026 | P-9001-226-7696-1 | P | IBM CORPORATION | 14748 | VARIOUS LOCATIONS CPL, TX | BPP AT VARIOUS LOCATIONS CPL | $13,391,717 | 0 | VARIOUS LOCATIONS CPL | IBM CORPORATION |
| 2982784 | 2026 | P-9001-226-7694-1 | P | IBM CORPORATION | 14748 | VARIOUS LOCATIONS CMC, TX | BPP AT VARIOUS LOCATIONS CMC | $15,292 | 0 | VARIOUS LOCATIONS CMC | IBM CORPORATION |
| 2987350 | 2026 | P-9000-226-3519-1 | P | IBM CORPORATION | 14748 | VARIOUS LOCATIONS CAL, TX | BPP AT VARIOUS LOCATIONS CAL | $271,981 | 0 | VARIOUS LOCATIONS CAL | IBM CORPORATION |
| 2126084 | 2026 | | P | IBM CORPORATION | 14748 | REFLE-IBM CORPORATION, TX | REFERENCE ONLY-IBM CORPORATION | $0 | 0 | REFLE-IBM CORPORATION | REFLE-IBM CORPORATION |
| 2851703 | 2026 | P-9000-222-0191-1 | P | IBM CORPORATION | 14748 | 1700 SUMMIT AVE, PLANO TX 75074 | BPP AT 1700 SUMMIT AVE - BRAD WORKS | $26,830,597 | 1700 | SUMMIT | IBM CORPORATION |

Source: Collin CAD 2026 property search results (*see* n.6). "Various locations" accounts appear to report the same equipment to overlapping taxing units; the countywide account (GCN JCN) reflects the total.

20. On information and belief, IBM has several offices in the State of Texas, including in Dallas.[7]

---

[7] Indeed, *IBM Office Locations in Texas*, https://www.indeed.com/cmp/IBM/locations/TX (last visited Oct. 25, 2026).

21. As shown by its property listings in Denton County, IBM has approximately $56 million of business personal property, including, on information and belief, data servers, at CyrusOne locations in Carrollton, Lewisville, and Roanoke.[8]

22. As shown by its property listings in Collin County, IBM has over $68 million of property, including data servers located within this District at 1700 Summit Ave., Plano, Texas 75074 and various locations.[9]

## THE PATENTS-IN-SUIT

23. VL IP owns the entire right, title, and interest in the ’868 Patent, which is titled “Cloud Computing Gateway, Cloud Computing Hypervisor, and Methods for Implementing Same.” The Patent issued on August 20, 2013 to inventor Duncan Christopher Hill from U.S. Patent Application No. 12/488,424 filed on June 19, 2009. A true and correct copy of the ’868 Patent is attached as **Exhibit A** to this Complaint.

24. VL IP owns the entire right, title, and interest in the ’599 Patent, which is titled “System and Method for a Cloud Computing Abstraction Layer with Security Zone Facilities.” The Patent issued on June 30, 2015 to inventors Frank R. Martinez and Eric Pulier from U.S. Patent Application No. 13/354,275 filed on January 19, 2012. A true and correct copy of the ’599 Patent is attached as **Exhibit B** to this Complaint.

25. VL IP owns the entire right, title, and interest in the ’474 Patent, which is titled “Cloud Computing Gateway, Cloud Computing Hypervisor, and Methods for Implementing Same.” The Patent issued on May 15, 2018 to inventor Duncan Christopher Hill from U.S. Patent

---

[8] Denton Central Appraisal District, Property Summary Reports, Tax Year 2026, Property ID Nos. 976738, 1002186, 1002187, and 1086487, https://www.dentoncad.com/property-search (printed Oct. 25, 2026).

[9] Collin Central Appraisal District, Property Search Results, Owner “IBM Corporation,” Tax Year 2026, https://esearch.collincad.org/search/ (last visited Oct. 25, 2026).

Application No. 15/452,032 filed on March 7, 2017. A true and correct copy of the '474 Patent is attached as **Exhibit C** to this Complaint.

26. Duncan Hill invented a novel cloud gateway system, cloud hypervisor system, and methods of implementing the same. His inventions were a significant advance in the field of cloud infrastructure. Mr. Hill patented these inventions in the '868 Patent.

27. Claim 5 of the '868 Patent reads as follows:

> 5. A cloud hypervisor system comprising:
> a processor;
> a pseudo-hypervisor creation tool configured, using the processor, to establish a pseudo-hypervisor instance;
> an API call listening tool configured, using the processor, to listen for and receive hypervisor API calls;
> a hypervisor API call translation tool configured, using the processor, to translate a hypervisor API call received by the API call listening tool into an intermediate representation;
> a cloud API translation tool configured, using the processor, to translate an intermediate representation into a cloud API call; and
> a routing tool configured, using the processor, to route an intermediate representation from the hypervisor API call translation tool to the cloud API translation tool.

28. Frank Martinez and Eric Pulier invented a virtualization environment adapted for development and deployment of at least one software workload. Their inventions were a significant advance in the fields of cloud services, applications, platforms, and infrastructure. Mr. Martinez and Mr. Pulier patented these inventions in the '599 Patent.

29. Claim 1 of the '599 Patent reads as follows:

> 1. A method, comprising:
> providing at least one processor capable of executing computing code in data communication with a nontransitory computer readable storage medium having encoded thereon computer executable instructions which, when executed on the processor, provide a virtualization environment adapted for development of a software workload to be deployed using at least one resource of a computing cloud, the software workload including a software unit of computing processing performed via at least one of an Infrastructure-as-a-Service (IaaS), a Platform-as-a-Service (PaaS), or a Service-as-a-Service

(SaaS), the virtualization environment having a metamodel framework that allows for the association of at least one policy to the software workload, the policy to be applied to the software workload upon its deployment;

defining a security zone including at least one of the cloud resource(s), wherein one or more boundaries of the security zone are updatable, wherein one or more updated policies are applicable to the software workload when deployed within the security zone, and wherein the security zone is definable at differing levels of abstraction;

determining at least one of a plurality of security zone policy types, each type comprising at least one security policy that may be applied to the software workload using at least one resource within the security zone;

including the at least one security zone policy type in the metamodel framework;

associating a security policy of the at least one security zone policy type(s) with the software workload upon development of the software workload; and

automatically applying the security policy to the software workload when the software workload is deployed within the security zone.

30. Duncan Hill invented a novel cloud gateway system, cloud hypervisor system, and methods of implementing the same. His inventions were a significant advance in the field of cloud infrastructure. Mr. Hill patented these inventions in the ’474 Patent.

31. Claim 1 of the ’474 Patent reads as follows:

1. A computer-implemented method for managing cloud infrastructure, the method comprising:

establishing an enterprise network, wherein one or more network end-user devices are connected to the enterprise network;

connecting an enterprise gateway appliance to the enterprise network;

establishing a secure virtual private network between the enterprise gateway appliance and at least a first enterprise virtual machine in a cloud provider network, wherein the establishing further comprises:

establishing a connection between the enterprise gateway appliance and at least one remote gateway node in the cloud provider network, wherein the secure virtual private network is established between the enterprise gateway appliance, the remote gateway node, and the first enterprise virtual machine; and

causing one or more network service plug-ins to execute in the cloud provider network.

**<u>COUNT 1</u>**

**(INFRINGEMENT OF U.S. PATENT NO. 8,514,868 BY IBM)**

32. VL IP incorporates by reference paragraphs 1-31 above.

33. IBM has directly infringed, and continues to directly infringe one or more claims of the ’868 Patent, including at least claim 5 of the ’868 Patent, literally and/or under the doctrine of equivalents, by or through making, using, offering for sale, selling within the United States, and/or importing into the United States computer products and/or services such as, for example, Red Hat OpenShift Virtualization Service on IBM Cloud in conjunction with IBM Cloud Virtual Private Cloud (VPC) and IBM Cloud File Storage for VPC (together, “IBM Cloud Virtualization Service”), in violation of 35 U.S.C. § 271(a).

34. IBM Cloud Virtualization Service directly infringes claim 5 of the ’868 Patent as set forth in **Exhibit D**.

35. IBM has and continues to actively induce its customers, end users, and third parties to infringe at least claim 5 of the ’868 Patent. IBM has taken affirmative actions to induce infringement by intentionally instructing its customers, end users, and third parties to infringe one or more claims of the ’868 Patent, including at least claim 5, through websites and online tutorials that provide instructions on the infringing use and implementation of the IBM Cloud Products, including IBM Cloud Virtualization Service, such as those at the following URLs:

- https://cloud.ibm.com/docs/openshift?topic=openshift-rovs-getting-started
- https://cloud.ibm.com/docs/openshift?topic=openshift-virt-storage-setup
- https://cloud.ibm.com/docs/openshift?topic=openshift-virt-vpc-file-vm-create
- https://cloud.ibm.com/docs/openshift?topic=openshift-rovs-manage

36. With knowledge of both the ’868 Patent and its infringement of the ’868 Patent, IBM has acted with specific intent or willful blindness to actively aid and abet its customers, end users, and third parties in infringing the ’868 Patent by making and using IBM Cloud Virtualization Service, in a manner constituting direct infringement of at least claim 5 of the ’868 Patent. IBM is thus liable for infringement of the ’868 Patent under 35 U.S.C. § 271(b).

37. IBM is liable as a contributory infringer of the ’868 Patent under 35 U.S.C. § 271(c) because IBM has offered to sell, sold, and/or imported, and continues to offer to sell, sell, and/or import, into the United States IBM Cloud Virtualization Service, which constitutes a material part of the inventions claimed in the ’868 Patent, knowing it to be especially made or especially adapted for use in an infringement of the ’868 Patent, and which is not a staple article or commodity of commerce suitable for substantial noninfringing use.

38. The published patent application US-2010/0027552A1 that ultimately issued as the ’868 Patent was cited by the examiner during the prosecution of IBM’s patent application no. 12/686,538 on April 24, 2013, evidencing notice to IBM of the ’868 Patent. Alternatively, IBM was willfully blind to the existence of the ’868 Patent and its infringement of the ’868 Patent. Prior to this lawsuit being filed, VideoLabs corresponded with IBM and proposed that the parties enter into a non-disclosure agreement (“NDA”) and engage in patent licensing discussions. IBM declined VideoLabs’ proposal.

39. IBM is on notice of its infringement of the ’868 Patent by no later than the filing and service of this Complaint. By the time of trial, IBM will have known and intended (since receiving such notice) that its continued actions would actively induce and/or contribute to the infringement of the ’868 Patent.

40. IBM’s infringement of the ’868 Patent has been and continues to be willful. IBM has known of the application that issued as the ’868 Patent since at least April 24, 2013, when that application was cited by the examiner against IBM’s own patent application, and, on information and belief, has known of the ’868 Patent since its issuance, and in any event no later than the filing and service of this Complaint. Despite that knowledge, and knowing or being willfully blind to the fact that IBM Cloud Virtualization Service infringes the ’868 Patent, IBM has continued, and

continues, to make, use, offer for sale, sell, and/or import IBM Cloud Virtualization Service, and to induce and contribute to its infringing use by others, without any good-faith basis to believe that the ’868 Patent is invalid or not infringed. IBM’s infringement of the ’868 Patent is and has been deliberate, intentional, and egregious, and entitles VL IP to enhanced damages of up to three times the amount of damages found or assessed pursuant to 35 U.S.C. § 284.

41. As a result of IBM’s infringement of the ’868 Patent, VL IP has suffered monetary damages and is entitled to no less than a reasonable royalty for IBM’s use of the claimed inventions of the ’868 Patent, together with interest and costs as determined by the Court. VL IP will continue to suffer damages in the future unless IBM’s infringing activities are enjoined by this Court.

42. VL IP will be irreparably harmed unless a permanent injunction is issued enjoining IBM and its agents, employees, representatives, affiliates, and others acting in concert with IBM from infringing the ’868 Patent.

**<u>COUNT 2</u>**
**(INFRINGEMENT OF U.S. PATENT NO. 9,069,599 BY IBM)**

43. VL IP incorporates by reference paragraphs 1-42 above.

44. IBM has directly infringed, and continues to directly infringe one or more claims of the ’599 Patent, including at least claim 1 of the ’599 Patent, literally and/or under the doctrine of equivalents, by or through making, using, offering for sale, selling within the United States, and/or importing into the United States computer products and/or services such as, for example, IBM Cloud Kubernetes Service in violation of 35 U.S.C. § 271(a).

45. IBM Cloud Kubernetes Service directly infringes claim 1 of the ’599 Patent as set forth in **Exhibit E**.

46. IBM has and continues to actively induce its customers, end users, and third parties to infringe at least claim 1 of the ’599 Patent. IBM has taken affirmative actions to induce

infringement by intentionally instructing its customers, end users, and third parties to infringe one or more claims of the ’599 Patent, including at least claim 1, through websites and online tutorials that provide instructions on the infringing use and implementation of IBM Cloud Kubernetes Service, such as those at the following URLs:

- https://cloud.ibm.com/docs/containers?format=pdf
- https://cloud.ibm.com/docs/containers?topic=containers-learning-path-dev
- https://cloud.ibm.com/docs/containers?topic=containers-pod-security-admission
- https://cloud.ibm.com/docs/containers?topic=containers-network_policies

47. With knowledge of both the ’599 Patent and its infringement of the ’599 Patent, IBM has acted with specific intent or willful blindness to actively aid and abet its customers, end users, and third parties in infringing the ’599 Patent by making and using IBM Cloud Kubernetes Service, in a manner constituting direct infringement of at least claim 1 of the ’599 Patent. IBM is thus liable for infringement of the ’599 Patent under 35 U.S.C. § 271(b).

48. IBM is liable as a contributory infringer of the ’599 Patent under 35 U.S.C. § 271(c) because IBM has offered to sell, sold, and/or imported, and continues to offer to sell, sell, and/or import, into the United States IBM Cloud Kubernetes Service, which constitutes a material part of the inventions claimed in the ’599 Patent, knowing it to be especially made or especially adapted for use in an infringement of the ’599 Patent, and which is not a staple article or commodity of commerce suitable for substantial noninfringing use.

49. The ’599 Patent was cited by the examiner during the prosecution of IBM’s patent application no. 14/852,653 on October 18, 2017, and was listed on an Information Disclosure Statement by IBM during prosecution of application no. 15/271,313 on September 21, 2016, evidencing notice to IBM of the ’599 Patent. Alternatively, IBM was willfully blind to the existence of the ’599 Patent and its infringement of the ’599 Patent. Prior to this lawsuit being

filed, VideoLabs corresponded with IBM and proposed that the parties enter into an NDA and engage in patent licensing discussions. IBM declined VideoLabs' proposal.

50. IBM is on notice of its infringement of the '599 Patent by no later than the filing and service of this Complaint. By the time of trial, IBM will have known and intended (since receiving such notice) that its continued actions would actively induce and/or contribute to the infringement of the '599 Patent.

51. IBM's infringement of the '599 Patent has been and continues to be willful. IBM has known of the '599 Patent since at least September 21, 2016, when IBM itself listed the '599 Patent on an Information Disclosure Statement during prosecution of its own patent application no. 15/271,313, and since at least October 18, 2017, when the '599 Patent was cited by the examiner during prosecution of IBM's patent application no. 14/852,653, and in any event no later than the filing and service of this Complaint. Despite that knowledge, and knowing or being willfully blind to the fact that IBM Cloud Kubernetes Service infringes the '599 Patent, IBM has continued, and continues, to make, use, offer for sale, sell, and/or import IBM Cloud Kubernetes Service, and to induce and contribute to its infringing use by others, without any good-faith basis to believe that the '599 Patent is invalid or not infringed. IBM's infringement of the '599 Patent is and has been deliberate, intentional, and egregious, and entitles VL IP to enhanced damages of up to three times the amount of damages found or assessed pursuant to 35 U.S.C. § 284.

52. As a result of IBM's infringement of the '599 Patent, VL IP has suffered monetary damages and is entitled to no less than a reasonable royalty for IBM's use of the claimed inventions of the '599 Patent, together with interest and costs as determined by the Court. VL IP will continue to suffer damages in the future unless IBM's infringing activities are enjoined by this Court.

53. VL IP will be irreparably harmed unless a permanent injunction is issued enjoining

IBM and its agents, employees, representatives, affiliates, and others acting in concert with IBM from infringing the ’599 Patent.

**COUNT 3**

**(INFRINGEMENT OF U.S. PATENT NO. 9,973,474 BY IBM)**

54. VL IP incorporates by reference paragraphs 1-53 above.

55. IBM has directly infringed, and continues to directly infringe one or more claims of the ’474 Patent, including at least claim 1 of the ’474 Patent, literally and/or under the doctrine of equivalents, by or through making, using, offering for sale, selling within the United States, and/or importing into the United States computer products and/or services such as, for example, IBM Cloud VPN for VPC in violation of 35 U.S.C. § 271(a).

56. IBM Cloud VPN for VPC directly infringes claim 1 of the ’474 Patent as set forth in **Exhibit F**.

57. IBM has and continues to actively induce its customers, end users, and third parties to infringe at least claim 1 of the ’474 Patent. IBM has taken affirmative actions to induce infringement by intentionally instructing its customers, end users, and third parties to infringe one or more claims of the ’474 Patent, including at least claim 1, through websites and online tutorials that provide instructions on the infringing use and implementation of IBM Cloud VPN for VPC, such as those at the following URLs:

- https://cloud.ibm.com/docs/vpc
- https://cloud.ibm.com/docs/vpc?topic=vpc-responsibilities-vpc
- https://www.ibm.com/products/vpn-for-vpc
- https://cloud.ibm.com/docs/solution-tutorials
- https://www.ibm.com/products/tutorials/accessing-your-on-premises-network-and-ibm-cloud-vpc-using-a-single-vpn-connection

58. With knowledge of both the ’474 Patent and its infringement of the ’474 Patent,

IBM has acted with specific intent or willful blindness to actively aid and abet its customers, end users, and third parties in infringing the ’474 Patent by making and using IBM Cloud VPN for VPC in a manner constituting direct infringement of at least claim 1 of the ’474 Patent. IBM is thus liable for infringement of the ’474 Patent under 35 U.S.C. § 271(b).

59. IBM is liable as a contributory infringer of the ’474 Patent under 35 U.S.C. § 271(c) because IBM has offered to sell, sold, and/or imported, and continues to offer to sell, sell, and/or import, into the United States IBM Cloud VPN for VPC, which constitutes a material part of the inventions claimed in the ’474 Patent, knowing it to be especially made or especially adapted for use in an infringement of the ’474 Patent, and which is not a staple article or commodity of commerce suitable for substantial noninfringing use.

60. IBM was willfully blind to the existence of the ’474 Patent and its infringement of the ’474 Patent. Prior to this lawsuit being filed, VideoLabs corresponded with IBM and proposed that the parties enter into an NDA and engage in patent licensing discussions. IBM declined VideoLabs’ proposal.

61. IBM is on notice of its infringement of the ’474 Patent by no later than the filing and service of this Complaint. By the time of trial, IBM will have known and intended (since receiving such notice) that its continued actions would actively induce and/or contribute to the infringement of the ’474 Patent.

62. IBM’s infringement of the ’474 Patent has been and continues to be willful. IBM has known of, or was willfully blind to, the ’474 Patent since before the filing of this Complaint, and in any event no later than the filing and service of this Complaint. Despite that knowledge, and knowing or being willfully blind to the fact that IBM Cloud VPN for VPC infringes the ’474 Patent, IBM has continued, and continues, to make, use, offer for sale, sell, and/or import IBM

Cloud VPN for VPC, and to induce and contribute to its infringing use by others, without any good-faith basis to believe that the ’474 Patent is invalid or not infringed. IBM’s infringement of the ’474 Patent is and has been deliberate, intentional, and egregious, and entitles VL IP to enhanced damages of up to three times the amount of damages found or assessed pursuant to 35 U.S.C. § 284.

63. As a result of IBM’s infringement of the ’474 Patent, VL IP has suffered monetary damages and is entitled to no less than a reasonable royalty for IBM’s use of the claimed inventions of the ’474 Patent, together with interest and costs as determined by the Court. VL IP will continue to suffer damages in the future unless IBM’s infringing activities are enjoined by this Court.

64. VL IP will be irreparably harmed unless a permanent injunction is issued enjoining IBM and its agents, employees, representatives, affiliates, and others acting in concert with IBM from infringing the ’474 Patent.

**PRAYER FOR RELIEF**

WHEREFORE, VL IP respectfully prays for the following relief:

(A) A judgment that IBM has directly infringed and continues to directly infringe one or more claims of the Asserted Patents literally and/or under the doctrine of equivalents under 35 U.S.C. § 271(a);

(B) A judgment that IBM has indirectly infringed and continues to indirectly infringe one or more claims of the Asserted Patents by inducing infringement under 35 U.S.C. § 271(b);

(C) A judgment that IBM has indirectly infringed and continues to indirectly infringe one or more claims of the Asserted Patents by contributing to infringement under 35 U.S.C. § 271(c);

(D) A judgment that IBM’s infringement of the Asserted Patents has been and continues to be willful;

(E) Compensatory damages in an amount according to proof, and in any event no less than a reasonable royalty, including all pre-judgment and post-judgment interest at the maximum rate allowed by law, together with enhanced damages of up to three times the amount of damages found or assessed pursuant to 35 U.S.C. § 284 in view of IBM's willful infringement;

(F) An order and judgment permanently enjoining IBM and its officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting in privity or in concert with them, and their parents, subsidiaries, divisions, successors and assigns from further acts of infringement of the Asserted Patents;

(G) A judgment that this is an exceptional case and awarding VL IP its costs and reasonable attorneys' fees incurred in this action as provided by 35 U.S.C. § 285; and

(H) A judgment granting VL IP such further relief as the Court may deem just and proper.

**JURY TRIAL DEMAND**

VL IP hereby demands trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38.

Dated: October 30, 2026

*/s/ David Alberti w/permission*
*William E. Davis, III*
David Alberti
CA Bar No. 220265 (Admitted E.D. Texas)
dalberti@albertilim.com
Sal Lim
CA Bar No. 211836 (Admitted E.D. Texas)
slim@albertilim.com
Russell S. Tonkovich
CA Bar No. 233280 (Admitted E.D. Texas)
rtonkovich@albertilim.com
James Barabas (*pro hac vice forthcoming)*
NY Bar No. 3911484
jbarabas@albertilim.com
Andrew Hamill
CA Bar No. 251156 (Admitted E.D. Texas)
ahamill@albertilim.com
Nicholas Martini (*pro hac vice forthcoming)*
CA Bar No. 237687
nmartini@albertilim.com
Lawrence McDonough (Admitted E.D. Texas)
CA Bar No. 218364
lmcdonough@albertilim.com
Ryan Dooley (*pro hac vice forthcoming)*
CA Bar No. 321645
rdooley@albertilim.com
**ALBERTI LIM & TONKOVICH LLP**
950 Tower Lane, Suite 1725
Foster City, CA 94404
Telephone: (650) 825-4300
Facsimile: (650) 460-8443

William Ellsworth “Bo” Davis III
**DAVIS FIRM P.C.**
Texas Bar No. 24047416
213 North Fredonia, Suite 230
Longview, Texas 75601
Tele: 903 230-9090
bdavis@davisfirm.com

***Attorneys for Plaintiff VL Collective IP LLC***